IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Wimer Realty, LLC; Wimer Holdings :
Corporation; and Richard G. Wimer Jr. :
and Jody Wimer, husband and wife, :
 : No.  656 C.D. 2018
     v. :
 : Argued: February 14, 2019
Township of Wilmington, :
     Appellant :


BEFORE: HONORABLE PATRICIA A. McCULLOUGH, Judge
    HONORABLE MICHAEL H. WOJCIK, Judge
    HONORABLE ELLEN CEISLER, Judge


OPINION BY
JUDGE McCULLOUGH        FILED: March 27, 2019


    The Township of Wilmington (Township) appeals from the April 13, 2018 order of the Court of Common Pleas of Lawrence County (trial court) granting the land use appeal of Wimer Realty, LLC, Wimer Holdings Corporation, and Richard G. Wimer Jr. and Jody Wimer, husband and wife (collectively, the Wimers), and denying the Township's motions to strike and dismiss.


**Facts and Procedural History**

    The Wimers are engaged in the business of catering and operating special events and, more recently, have managed a barn wedding venue. On June 22, 2017, the Wimers purchased real property located at 3538 State Route 956 in Wilmington Township, Lawrence County, Pennsylvania (the Property), consisting of three parcels. The parcel at issue consists of 31.42 acres, approximately 25 of which are used for

farming, and has a barn situated upon it. The Wimers intended to invest approximately $2,200,000.00 into the Property in order to renovate and improve the barn so that they can host events in it, including weddings and receptions. (Trial court op. at 2.)

Wilmington Township's Zoning Ordinance was originally silent as to the use of a barn as a wedding venue in the Township. In September 2016, the Township's Planning Commission drafted a proposed amendment to the Zoning Ordinance to address wedding barns, which was considered by the Township's Board of Supervisors (Board) at a November 7, 2016 meeting. Shortly thereafter, the first wedding barn venue, "Five Fillies," was established in the Township and began operations pursuant to a special exception granted by the Zoning Hearing Board. *Id.* at 2, 14.

In January 2017, the Township sent three unnumbered draft ordinances, which became known as "Ordinance No. 1 of 2017," addressing wedding barn venues located in the Township, to the Lawrence County Planning Commission, as well as the Township Planning Commission, for review and comment. A public hearing on Ordinance No. 1 of 2017 was advertised on February 14, 2017, and February 21, 2017, and the hearing was held on March 2, 2017. At the conclusion of the hearing, Ordinance No. 1 of 2017 was voted down by the Board. *Id.* at 2-3.

On June 27, 2017, the Township forwarded draft Ordinance No. 2 of 2017, which pertained to wedding barns by conditional use in agricultural districts, and Ordinance No. 3 of 2017, which pertained to the same in residential zoning districts, to the Lawrence County and Township Planning Commissions for review and comment. Neither of the draft ordinances were advertised for adoption as of June 27, 2017. *Id.* at 3.

The following month, on July 20, 2017, the Wimers filed a request for hearing on their challenge to the Township's Zoning Ordinance, as amended, as well

as a proposed curative amendment, pursuant to section 916.1(a)(2) of the Pennsylvania Municipalities Planning Code (MPC), 53 P.S. §10916.1(a)(2).[1] On September 7, 2017, a hearing was held before the Board, at which the Wimers presented the testimony of Stephen Victor, a landscape architect and expert in zoning and land use planning, who assisted the Wimers in preparation of the plans and explanatory materials they submitted to the Township. Mr. Victor stated that Ordinance No. 105 of 1997, which was in effect at the time of the hearing, would not permit the use of a special event venue proposed by the Wimers but noted that the curative amendment submitted by the Wimers would cure the deficiency in the Zoning Ordinance. (Trial court op. at 6; Reproduced Record (R.R.) at 84a, 93a-125a.)

The Township presented the testimony of John Trant, an attorney and land use planning consultant certified by the American Institute of Certified Planners. Mr. Trant impliedly agreed that the use proposed by the Wimers was not provided for in the Zoning Ordinance, but opined that the Wimers' proposed curative amendment was deficient in that it was, among other things, too specific so as to be exclusionary and difficult to enforce throughout the Township. However, Mr. Trant did not testify that

---

[1] Act of July 31, 1968, P.L. 805, *added by* Act of December 21, 1988, P.L. 1329, *as amended*, 53 P.S. §10916.1(a)(2). This section states,

> A landowner who, on substantive grounds, desires to challenge the validity of an ordinance or map or any provision thereof which prohibits or restricts the use or development of land in which he has an interest shall submit the challenge either:
>
> . . .
>
> (2) to the governing body under section 909.1(b)(4), together with a request for a curative amendment under section 609.1.2.

53 P.S. §10916.1(a)(2).

the proposed curative amendment would pose a threat to the health, safety, or wellbeing of the Township's residents. Several Township residents also testified and presented their opinions on the proposed curative amendment. (Trial court op. at 6-7; R.R. at 147a-53a.)

At the conclusion of the hearing, the Board voted to deny the Wimers' challenge to the Zoning Ordinance and not to accept the proposed curative amendment. The Board additionally voted to refer draft Ordinance No. 3 of 2017, incorporating the comments of Mr. Trant, to the Township and Lawrence County Planning Commissions for review and comment. (Trial court op. at 7.)

On September 25, 2017, the Wimers filed a land use appeal in the trial court, seeking review of the Board's decision. The Wimers subsequently filed a "Renewed, Supplemental and Restated Land Use Appeal Notice" (Renewed Land Use Appeal), which "recit[ed] the history of the case subsequent to [the date of the Board's decision] and set[] forth essentially a restatement of the original Land Use Appeal Notice." *Id.* at 7. The Township responded by filing four motions: (1) a motion to open the record and present additional evidence; (2) a motion to strike the Wimers' Renewed Land Use Appeal; (3) a motion to dismiss the land use appeal as moot; and (4) a motion to dismiss the land use appeal based upon the pending ordinance doctrine. *Id.* at 7-8.

The Township's motion to dismiss the land use appeal was premised upon the argument that any alleged deficiencies in the current Zoning Ordinance would be moot after the Township adopted Ordinance No. 5 of 2017, or because the Zoning Ordinance was not exclusionary. Ordinance No. 3 of 2017, following revisions, became titled Ordinance No. 5 of 2017, which permitted a "Special Event Barn" as an accessory use in an A-Agricultural Zoning District and as a principal or accessory use

4

in a C-Commercial Zoning District. Ordinance No. 5 of 2017 was adopted by the Board on November 9, 2017, following an advertised public hearing. *Id.* at 8.

The court granted, in part, the Township's motion to open the record, permitting it to enter into the record a certified copy of Ordinance No. 5 of 2017, on the basis that it was not available for introduction at the hearing before the Board and because it might have been relevant to the Township's argument that it cured any alleged defect in the Zoning Ordinance. However, the court denied the motion in all other respects, reasoning that "the Township had the opportunity to be fully heard on the underlying matter at the hearing on September 7, 2017, the Township's expert, John Trant, testified on September 7, 2017[,] and presented his expert opinion[,] and there was no mention in the record that the Township intended to present additional testimony or that certain evidence proffered by the Township was excluded." *Id.* at 8.

After hearing legal argument, the trial court issued an opinion and order finding in favor of the Wimers. Initially, the trial court ruled that the Wimers had perfected their land use appeal. The court noted that, while the Board voted to deny the Wimers' challenge to the Zoning Ordinance, it did so orally and it did not issue specific findings of fact or conclusions of law. Additionally, the Board voted to amend Ordinance No. 3 of 2017 to include the recommendations of Mr. Trant and to send it for review and comment. Thus, the trial court found that the Board's decision after the hearing was

> not entirely dispositive towards the Wimers' concerns in that the Board denied the Wimers' challenge and proposed curative amendment, and did not 'approve' a draft ordinance since revisions needed to be made to Ordinance No. 3 of 2017 and it needed to be sent to [the] Township Planning Commission and [the] Lawrence County Planning Commission for recommendation and comment.

*Id.* at 10.

5

The trial court next addressed the Township's motion to strike, which asserted that the Wimers' Renewed Land Use Appeal should have been stricken because it attempted to raise an issue that the Wimers waived by failing to raise it in their original land use appeal. *Id.* Specifically, the Township asserted that the Wimers were raising an issue as to whether the Board actually made a decision or whether their land use appeal was deemed denied. The Township contended that the Board did indeed deny the Wimers' land use appeal/curative amendment at the end of the hearing and, thus, the decision was not a deemed denial.[2] (Original Record (O.R.) at Item No. 8.)

The court disagreed that the Renewed Land Use Appeal should have been stricken from the record. It noted that section 1002-A(a) of the MPC, *added by* Act of December 21, 1988, P.L. 1329, requires an appeal from a land use decision to be filed 30 days after the "entry of the decision," 53 P.S. §11002-A(a), and that section 916.1(c)(7) of the MPC provides that, if the governing body fails to act on the landowner's request within 45 days after the last hearing, "a denial of the request is deemed to have occurred on the 46th day after the close of the last hearing." 53 P.S. §10916.1(c)(7). Thus, the court explained that the Wimers filed the original land use appeal within 30 days of the September 7, 2017 hearing but, out of an abundance of caution, also filed the Renewed Land Use Appeal 30 days after the hearing in the event the Board's decision was a deemed denial. The court observed that the Renewed Land Use Appeal "substantially contain[ed] the same factual matters and arguments as the

---

[2] The Township acknowledged that section 908(9) of the Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10908(9), requires written findings of fact and conclusions of law in support of the denial of a curative amendment. However, the Township noted that section 609.1(b) of the MPC, *added by* Act of June 1, 1972, P.L. 333, 53 P.S. §10609.1(b), which addresses the procedure for curative amendments, specifically states that section 908(9) does not apply to a zoning challenge/curative amendment proceeding. *See* O.R. Item No. 8.

6

[original] [l]and [u]se [a]ppeal, and only recited matters subsequent to the hearing of September 7, 2017." (Trial court op. at 12.) Additionally, the court emphasized that, during argument before it, counsel for the Township conceded that the Wimers' land use appeal was timely filed. In denying the motion to strike the court stated,

> [A]ny defect or error made by the Wimers in filing [] does not affect substantial rights of the parties, but rather only confirms the ability of the Wimers to indeed take an appeal to this [c]ourt of the Board's actions given the manner by which the hearing before the Board was concluded.

*Id.*[3]

Next, the court addressed whether the Wimers' appeal was moot given the Township's adoption of Ordinance No. 5 of 2017. In concluding that the appeal was not moot, the court observed that there were certain "substantial [i]nconsistencies" between Ordinance No. 5 of 2017 and the Wimers' proposed curative amendment. Specifically, Ordinance No. 5 limited the number of events to 12 per year and gave the Board authority to reduce below 300 the maximum number of guests, whereas the curative amendment did not include these restrictions. On this point, the court cited Mr. Wimer's testimony that, in order for the wedding barn to be financially feasible, the Wimers would need to be able to hold more than 12 events per year with up to 300 guests per event. Thus, the court concluded that because Ordinance No. 5 of 2017 substantially impacted the Wimers' ability to conduct their proposed use in a manner

---

[3] It appears the court proceeded to address the merits of the land use appeal and not the Renewed Land Use Appeal. *See* Trial court op. at 12; Trial court order at 1-2 (granting the Wimers' "Land Use Appeal" but denying the Township's motion to strike the Wimers' "Renewed, Supplemental and Restated Land Use Appeal Notice"). It does not appear that the trial court ultimately ruled on the Wimers' Renewed Land Use Appeal, despite refusing to strike it from the record. Nonetheless, the distinction is meaningless for our purposes, as the Renewed Land Use Appeal contained the same facts and arguments as the original and differed only insofar as it "recited matters subsequent to the hearing of September 7, 2017." (Trial court op. at 12.) Thus, the Renewed Land Use Appeal is legally insignificant here.

7

which was financially and economically reasonable under the circumstances, the Wimers' land use appeal was not moot by virtue of the passage of Ordinance No 5. 2017. *Id.* at 13.

The court then addressed whether the Wimers' land use appeal was moot under the pending ordinance doctrine or because the Zoning Ordinance was not exclusionary. The court again determined it was not. It observed that, in order for the pending ordinance doctrine to apply, the municipality must publically declare its intent to consider a particular zoning scheme by advertising to the public its intention to hold a public hearing on such rezoning. *See Casey v. Zoning Hearing Board of Warwick Township*, 328 A.2d 464 (Pa. 1974). In this case, the trial court noted that the Wimers filed their request to challenge the Zoning Ordinance and for adoption of a curative amendment on July 20, 2017, at which point the Board had already declined to adopt Ordinance No. 1 of 2017 but had not advertised its intent to adopt Ordinance No. 3 of 2017. Further, the court emphasized that the Board "gave no approval to advertise the notice of intent to adopt Ordinance No. 5 of 2017 until after the Board had denied the Wimers' challenge and proposed curative amendment on September 7, 2017." (Trial court op. at 15.) Accordingly, the court found that the pending ordinance doctrine did not apply.

The court next addressed the Township's argument that the Wimers' zoning challenge was properly denied because the Zoning Ordinance was not exclusionary in that another wedding barn, the Five Fillies, had been previously authorized by the Zoning Hearing Board and that, instead of filing a land use appeal, the Wimers should have likewise sought a special exception from the Zoning Hearing Board. The court noted that the Zoning Hearing Board's decision permitting the Five Fillies wedding barn appeared to be an "aberration," as there was, at that time, no

8

provision in the Zoning Ordinance allowing use as a special event barn. Consequently, the court found that the Wimers were not required to submit to a hearing before the Zoning Hearing Board to seek a special exception for a wedding barn use when such a use was not permitted and, thus, the Wimers were not barred from pursuing their land use appeal merely because the Five Fillies farm had obtained special permission to operate a wedding barn. Accordingly, the court denied the Township's motion to dismiss the land use appeal on the basis of the pending ordinance doctrine and/or because the Zoning Ordinance was not exclusionary. *Id.* at 16.

The trial court then considered whether the Township established that the exclusion of the proposed zoning use was related to the protection of the public health, safety, or welfare of the residents of the Township, or whether the proposed use was injurious to the public health, safety, morals, or general welfare of its residents. The trial court again answered this in the negative, reasoning that although Mr. Trant offered various technical objections to the content of the curative amendment, he did not opine that it would be in any way injurious to the public health, safety, morals, or general welfare of the Township's residents. Thus, the court determined that the Township did not present sufficient evidence to hold that the Wimers' proposed use of the land would pose a threat of injury to the health, safety, morals, or general welfare of the public. *Id.* at 16-17.

Finally, the trial court addressed whether the Wimers' challenge to the Zoning Ordinance and proposed curative amendment should have been granted by the Board, answering it in the affirmative. The court analyzed *Casey*, 328 A.2d at 464, wherein our Supreme Court held that a successful challenger of a zoning ordinance must be granted the relief requested unless the governmental unit proves that the proposed use will be injurious to the public health, safety, or welfare. The trial court

9

also considered our precedent in *In re Miller & Son Paving, Inc.*, 636 A.2d 274 (Pa. Cmwlth. 1993), wherein we held that, in the case of a *de jure* exclusion of a use, the sole remedy for a successful challenger is to allow the use somewhere, and the successful challenger must receive that benefit in the form of at least partial approval of his proposal. *In re Miller & Son*, 636 A.2d at 277.

With regard to the present case, the trial court made several conclusions. First, the court stated that "a use as a wedding barn in Wilmington Township, where the number of wedding-type events is unlimited and the number of guests at the facility is limited to 300 is entirely reasonable." (Trial court op. at 18.) Next, the trial court held that the Wimers "indeed satisfied their burden of proving that Wilmington Township Ordinance No. 105 of 1997, as amended, as it existed on September 7, 2017, failed to adequately provide for use as a special event venue." *Id.* Finally, the trial court found that the Board did not "sufficiently justify" its decision to decline the Wimers' challenge to the Zoning Ordinance and proposed curative amendment because the Township "failed to demonstrate that the Wimers' use of their property as a special event venue would have an [e]ffect on the public health, safety and welfare in a meaningful way." *Id.* Thus, the court concluded that the Wimers' request for a challenge to the Zoning Ordinance and proposed curative amendment should have been granted by the Board.

Accordingly, the court determined that the Board's decision was an abuse of discretion, granted the Wimers' land use appeal, and permitted them to use the Property in accordance with the terms of their proposed curative amendment, but

10

required them to comply with all other applicable Township ordinances not addressed with the curative amendment.[4]

The Township filed the present appeal,[5] arguing (1) the Wimers' land use appeal was moot based upon Ordinance No. 5 of 2017; (2) the Wimers' land use appeal should have been dismissed under the pending ordinance doctrine and/or because the Township's Zoning Ordinance was not exclusionary; (3) the Board's decision was supported by substantial evidence; and (4) the trial court abused its discretion in refusing to permit the Township to supplement the record.

## Discussion

### 1. *Mootness under Ordinance No. 5 of 2017*

The Township argues that the trial court erred in determining that the Wimers' land use appeal was not moot as a result of the passage of Ordinance No. 5 of 2017 because it cured any alleged defects raised in the Wimers' land use appeal. The Township relies on our decision in *Paradise Materials, Inc. v. Paradise Township*, 676 A.2d 1314 (Pa. Cmwlth. 1996), wherein we granted a township's motion to quash a

---

[4] The court limited the application of the curative amendment provision "only to the subject premises and not to any other property or location in Wilmington Township." (Trial court order at 1-2.)

[5] Where the trial court takes additional evidence on the merits, it must review the case *de novo*, and this Court reviews the trial court's findings of fact and conclusions of law for an error of law or abuse of discretion. *See Coal Gas Recovery, L.P. v. Franklin Township Zoning Hearing Board*, 944 A.2d 382 (Pa. Cmwlth. 2008).

landowner's appeal because the township's curative amendment specifically addressed each element of the landowner's proposed curative amendment, thereby curing the zoning ordinance's invalidity and rendering the landowner's appeal moot.[6] *Id.* at 1317. Notably, the landowner's proposed curative amendment sought to permit the following:

> (1) concrete plants; (2) asphalt plants; (3) the manufacture of stone-related products; (4) the storage, maintenance and repair of construction and quarry vehicles and equipment; (5) the storage of stone and stone products; (6) stone crushing and screening; and (7) attendant and accessory uses for the aforesaid structures, storage equipment, scales and offices related to the operation of the foregoing.

*Id.* In comparison, the township's municipal curative amendment permitted, as a conditional use in a B-2 Business District,

> (1) concrete plants; (2) asphalt plants; (3) the manufacture of stone-related products; (4) the storage and minor maintenance of vehicles and equipment; (5) retail and wholesale sales of stone excavated on the site; and (6) offices related to the operations.

*Id.* (internal citations omitted).

The Township analogizes *Paradise Materials* to the instant case, arguing that the Board "has done exactly as requested by the Wimers," (Township's brief at 14), in their challenge, which urged the Board "to cure the invalidity of the Zoning Ordinance by providing for Special Event Venue use in [the] Township," (R.R. at 4a), by amending the Zoning Ordinance "to permit Special Event Venues as well as similar

---

[6] In *Paradise Materials*, the township had already begun the process of enacting a municipal curative amendment and, in April 1994, passed a resolution with specific findings regarding the issues that the municipal curative amendment was to address. In August 1994, the landowner filed a petition for its own curative amendment. One month later, the township enacted its municipal curative amendment. *Paradise Materials*, 676 A.2d at 1315-16.

uses within the Township," (Township's brief at 14). The Township states that Ordinance No. 5 of 2017 provides for Special Event Barns as an accessory use in the Agricultural Zone, which is where the Wimers' Property is located. Additionally, the Township notes that the Ordinance also permits Special Event Barns, banquet halls, conference centers, and special event venues in C-Commercial Districts as a principal and accessory use. The Township further asserts that the "Special Event Barn" and "Special Event Venue" definitions in Ordinance No. 5 of 2017 closely track the use proposed by the Wimers' proposed curative amendment.

The Township acknowledged that some of the regulations of the Special Event Barn and Special Event Venue use in Ordinance No. 5 differ from the curative amendment terms proposed by the Wimers, but it argues that the Wimers are not guaranteed an absolute right to site-specific relief to develop in the specific way they propose. On that point, the Township asserts that the trial court erred in granting site-specific relief to the Wimers because it provided "a windfall beyond what [was] necessary to cure the alleged defect in the ordinance." (Township's brief at 16) (citing *Piper Group, Inc. v. Bedminster Township Board of Supervisors*, 30 A.3d 1083 (Pa. 2011)). The Township asserts that under *Piper Group*, all that should have been granted to the Wimers is that which was necessary to the cure the constitutional defect.

In response, the Wimers challenge the applicability of *Paradise Materials*, observing that, in that case, the township recognized the deficiencies in its zoning ordinance and, taking advantage of section 609.2 of the MPC, 53 P.S. §10609.2,[7] had 180 days to adopt an ordinance curing the acknowledged deficiency, during which no landowner challenge could be asserted. Noting that the landowner improvidently filed a petition for a curative amendment during those 180 days, the Wimers assert that the

_____

[7] Section 609.2 of the MPC was added by Section 2 of the Act of October 5, 1978, P.L. 1067, 53 P.S. §10609.2.

township rightfully refused to hold a hearing and to adopt its own curative amendment. The Wimers emphasize that, in *Paradise Materials*, the township's curative amendment was nearly identical to the one proposed by the landowner, which resulted in the issue being moot.

Conversely, the Wimers observe that, here, the Township did not acknowledge a deficiency and resolve to enact a municipal amendment and, further, the municipal amendment adopted after the Wimers' challenge was "not close" to what the Wimers sought. (Wimers' brief at 25.) The Wimers assert that the use described in their proposed curative amendment was a permitted use, which would be a full-time, year-round commercial operation, that would not be limited with regard to the number of events per year, the days on which events may be held, the presence of alcohol, or extent of improvements to the host structure. Further, they observe their proposed use would involve catering facilities or other culinary and special event-related services and would require some on-site food preparation.

In comparison, the Wimers contend that Ordinance No. 5 of 2017 would permit "Special Event Barns" only as a conditional accessory use in the agricultural district, which must be "secondary and shall not drastically alter the visual or material character of the Barn except as necessary to provide safe use by patrons . . . ." (Wimers' brief at 26) (quoting Ordinance No. 5 of 2017, R.R. at 445a). Further, the Wimers observe that, under Ordinance No. 5, the number of events is limited to 12 per year, which may be held on Fridays, Saturdays, and Sundays, the number of guests is limited to 200 people, excluding staff, no alcohol may be sold, and food preparation on-site is limited. Thus, the Wimers argue that Ordinance No. 5 of 2017 did not resolve their

14

challenge because it did not permit their proposed use in an agricultural district, thus, the mootness doctrine is inapplicable here.[8]

We disagree with the Township that Ordinance No. 5 rendered the Wimers' challenge moot. As the Wimers point out, there were substantial differences between Ordinance No. 5 and their proposed curative amendment, such that we cannot agree that Ordinance No. 5 substantially granted them what they sought. Notably, in *Paradise Materials*, in determining that the landowner's challenge was moot, we relied upon the fact that the amended ordinance was very nearly identical to what the landowner sought. 676 A.2d at 1317. Such was not the case here and thus we find no error in the trial court's refusal to dismiss the land use appeal for mootness.

## 2. *Pending Ordinance Doctrine*

The Township argues that the Wimers' challenge should have been dismissed pursuant to the pending ordinance doctrine and/or because the Zoning Ordinance was not exclusionary. The Township asserts that it publically declared its intention to amend the Zoning Ordinance to provide for wedding barns, or similar uses, as early as February of 2017, when it published advertisements in the local paper on February 14 and 21 announcing a public hearing on Ordinance No. 1 of 2017, which was to occur on March 2, 2017. The Township asserts that when the Board voted down Ordinance No. 1, "the matter was returned to the Board [], and the Planning

---

[8] The Wimers also argue that the Township misconstrues *Piper Group*, which involved a second landowner challenger of an ordinance, who attempted to piggyback onto the first successful challenger. The Wimers assert that *Piper Group* stood for the proposition that only the first challenger is entitled to site-specific relief, which, in the present case, are the Wimers.

Commission for further revisions of the amendment, ultimately leading to the adoption of [Ordinance No. 5 of 2017] on November 9, 2017." (Township's brief at 19.)

The Township asserts that, even if the amendment was not pending when the Wimers filed their challenge, their argument fails nonetheless because the Township did not violate the ultimate goal of the pending ordinance doctrine, which is to bar a municipality from attempting to thwart a valid zoning challenge by enacting a zoning amendment after a zoning challenge has been filed. *See Casey*, 382 A.2d at 469. Further, the Township asserts that the Wimers' challenge should have been considered in light of the amended zoning ordinance because the Township did not attempt to "zone around" the Wimers' Property by fixing the unconstitutionality of the Zoning Ordinance but leaving the Wimers without relief, since wedding barns are permitted in the area that encompasses the Wimers' Property, pursuant to Ordinance No. 5. (Township's brief at 20.)

The Township asserts that *Piper Group*'s pronouncement—where a township cures a *de facto* defect in its ordinance and the cure applies to the challenger's property, it is lawful for a challenger to be "thwarted" from developing the property in the specific manner it proposed—applies here and, therefore, the trial court should not have granted relief beyond that which was necessary to cure the constitutional defect, which resulted in a windfall for the Wimers. 30 A.3d at 1097.

In response, the Wimers assert that there was no pending ordinance when they filed their challenge because there had been no public advertisement regarding the Township's intention to hold public hearings on the matter. Citing *Kaufman & Broad, Inc. v. Board of Supervisors of West Whiteland Township*, 442 A.2d 1220 (Pa. Cmwlth. 1982), the Wimers assert that the critical point in time is the date of advertisement. The Wimers contend that "there is no evidence in the record" that the February

16

advertisements for the public hearing on Ordinance No. 1 occurred.[9] (Wimers' brief at 23.) With regard to Ordinance Nos. 2 and 3, the Wimers state that the fact they were forwarded to the planning commissions for consideration in June 2017 did not render them "pending" under *Casey* because there was no advertisement prior to when the Wimers filed their challenge in July 2017. *Id.*

The Wimers argue that, even if Ordinance Nos. 1, 2, or 3 were under consideration when they filed their challenge, none can be considered a pending ordinance in that they were all materially different than the Wimers' proposed curative amendment. Further, the Wimers note that Ordinance No. 3, which was scheduled for a hearing just prior to the Wimers' hearing on their challenge, only addressed incidental use of barns for weddings, whereas their proposed use sought a full-time, full service event venue providing all the amenities and services necessary to host weddings, receptions, and similar events, without limitation or restriction.

Finally, the Wimers assert that the Township failed to formally recognize a deficiency in its Ordinance because the Board voted down the first ordinance addressing wedding barn venues and, only after the Wimers "pushed the issue," the Township took action after having tabled the amendment for six months. (Wimers' brief at 27.) The Wimers contend that the Township's cure, via Ordinance No. 5, must be disregarded as an impermissible attempt to thwart a valid challenge since there was no similar ordinance pending on the date their challenge was filed.

_____

[9] Exhibit 7 attached to the Township's motion to dismiss pursuant to the pending ordinance doctrine and/or because the Zoning Ordinance was not exclusionary is a letter titled, "Notice of Public Hearing, Special Meeting and Intention to Adopt Wilmington Township Ordinance No. 1 of 2017," indicating that Ordinance No. 1 of 2017 was available for public inspection and notifying the public that a hearing on its adoption would occur on March 2, 2017, at 5:00 p.m. at the provided address. (O.R. at Item No. 11, Ex. 7.) In the footnote portion of the document, the letter stated, "Please publish on February 14 and February 21, 2017," and "Please bill Wilmington Township directly." *Id.*

17

In *Piper Group*, the Supreme Court set forth a thorough analysis of its case law on the pending ordinance doctrine:

> In *Casey,* 328 A.2d 464, a landowner challenged a Warwick Township, Bucks County, zoning ordinance because it failed to provide for multi-family housing.[] Two days later, the planning commission recommended adopting a curative ordinance that would provide for multifamily housing in the township, but not in the specific district where the challenger's land was located. Approximately two weeks later, the Board gave public notice of the proposed amendment. It was enacted three weeks thereafter. The zoning board then dismissed the landowner's challenge. The court of common pleas affirmed, reasoning that the amended ordinance cured the defect. The Commonwealth Court reversed, holding that the amended ordinance could not be considered because it was not pending at the time of the landowner's challenge.

> This Court affirmed the Commonwealth Court, and in doing so considered the pending ordinance doctrine, as it applied to the *Casey* factual scenario. We noted that in the typical pending ordinance case, a landowner seeks a building permit for a particular use permitted under the current ordinance but prohibited under a new ordinance pending when the landowner files its application. In that situation, courts will look to the new ordinance, rather than the prior one, if the ordinance was "pending": *i.e.*, if the governing body had "resolved to consider a particular scheme of rezoning and has advertised to the public its intention to hold public hearings on the rezoning" before the landowner sought the permit. *Casey*, 328 A.2d at 467.

> In *Casey,* we applied those same principles of the pending ordinance doctrine from the building permit application cases to the scenario of ordinance challenges. *Id.* As in the building-permit situation, the new ordinance would be considered if it was pending at the time of the landowner's challenge to the ordinance. However, the converse is true as well: "we cannot allow a municipality to thwart a valid challenge to its zoning ordinance by adopting a curative

18

provision, which was not considered or advertised prior to the time of the challenger's application." *Id.* at 469. The reason for the *Casey* rule is simple: it would be inequitable to "penalize the successful challenger by enacting an amendatory ordinance designed to cure the constitutional infirmity, but also designed to zone around the challenger." *Id.* at 468. Otherwise, the process as a whole would be a "farce," where the landowner who takes the time and effort to file a valid challenge is thwarted by a "retributory township." *Id.* at 468–469.[] Instead, we held that a successful challenger is entitled to "definitive relief" so long as the challenger complies with other reasonable extant zoning restrictions.

*Piper Group*, 30 A.3d at 1094-95 (footnotes omitted).

Here, the trial court focused on the fact that the public did not have notice that an ordinance was "pending" at the time the Wimers filed their challenge because the Township did not advertise its intent to address Ordinance No. 3 after the Board voted down Ordinance No. 1 of 2017. With regard to advertisement, the trial court states that the Township did advertise for a public hearing on Ordinance No. 1 on February 14, 2017, and February 21, 2017. (Trial court op. at 3.) The Wimers specifically challenge this fact. Significantly, although the Township contends that these advertisements occurred, it does not appear that copies of the advertisements, as they appeared in the paper, were ever actually submitted into the record.[10]

We need not, however, resolve the issue of whether there is substantial evidence that the February 2017 advertisements occurred because we conclude that, even if the record contained definitive evidence that the advertisements occurred, that action did not constitute a "sufficient public declaration" of the Township's intention

---

[10] As noted above, an exhibit to the Township's motion to dismiss indicated that a public hearing for Ordinance No. 1 would occur on March 2, 2017, at 5:00 p.m. at the advertised address. (O.R. at Item No. 11, Ex. 7.) In the footnote portion of the document, the notice stated, "Please publish on February 14 and February 21, 2017," and "Please bill Wilmington Township directly." *Id.*

19

to continue to address the wedding barn issue six months later when the Wimers filed their challenge and proposed curative amendment. In order for the Township to have taken advantage of the pending ordinance doctrine, it should have advertised its intention to continue to address the wedding barn issue—specifically, by giving the public notice that it revised Ordinance No. 1 by splitting it into Ordinance Nos. 2 and 3 of 2017.[11] As it stands, there is no evidence, and the Township does not contend, that the public had any reason to know of the private correspondence between the Board and the planning commissions regarding Ordinance Nos. 2 and 3. Further, it is of note that after the September 7, 2017 hearing on the Wimers' land use appeal, the Board voted to refer only Ordinance No. 3 of 2017 to the planning commissions. Even if Ordinance No. 3 of 2017, pertaining to wedding barns in residential districts, had been adopted, the Wimers would still have been without relief as the Property and proposed site of their wedding barn is located in an agricultural district. *See Casey*, 328 A.2d at 468 (forbidding a municipality from attempting to cure an exclusionary zoning ordinance with an amendment designed to "zone around the challenger," thereby permitting the use while nonetheless leaving the challenger without relief).

Accordingly, the trial court did not commit legal error in declining to consider Ordinance No. 5 of 2017, instead of the unamended Zoning Ordinance, in the context of the Wimers' land use appeal.

### 3. *Judicial Remedy*

---

[11] Pertinent to this point, in its motion to dismiss, the Township stated that, after being voted down, Ordinance No. 1 of 2017 "was returned to the Board of Supervisors, and the Planning Commission for further revisions." (O.R. at Item No. 11, ¶23.) However, it is not clear whether this was publicly announced at the hearing after the vote.

20

Having concluded the trial court appropriately considered the Wimers' challenge to the unamended Zoning Ordinance, we must consider whether the trial court erred in determining the Zoning Ordinance was unconstitutionally exclusionary and whether it erred in granting relief in the form of permitting the Wimers to use the Property in accordance with the terms of their proposed curative amendment.

In a *de jure* challenge to a zoning ordinance, a landowner asserts that the ordinance totally excludes a proposed use. *Caln Nether Company, L.P. v. Board of Supervisors*, 840 A.2d 484, 491 (Pa. Cmwlth. 2004). The issue of whether a zoning ordinance is exclusionary is a question of law, reviewable by this Court. *Id.* While a zoning ordinance is presumptively valid and constitutional, an ordinance that effects a total prohibition of an otherwise legitimate business use is particularly suspect. *Atiyeh v. Board of Commissioners of the Township of Bethlehem*, 41 A.3d 232, 236 (Pa. Cmwlth. 2012). A challenger can rebut the presumption of validity by demonstrating that the ordinance completely excludes a legitimate use. *Id.* Once this is established by the landowner, the burden shifts to the municipality to show that the exclusion is substantially related to the promotion of public health, safety, and welfare. *Id.*

The fact that a zoning ordinance does not contain a specific provision addressing a proposed use is not, by itself, a basis for finding an unconstitutional exclusion of that use. *Caln Nether*, 840 A.2d at 491. Where an ordinance does not mention a specific use, we must determine whether the proposed use is included within another use that has been specifically provided. *Id.* When a proposed use can be considered within another zoning classification or, where a zoning ordinance is broad enough to encompass the proposed use, there is no *de jure* exclusion. *Id.* When considering whether a proposed use falls within a given category of permitted use, we

21

are mindful that ordinances are to be construed expansively, affording the landowner the broadest possible use and enjoyment of his or her land. *Id.*

In this case, the trial court did not err in finding that the Zoning Ordinance in effect at the time of the Wimers' challenge was unconstitutionally exclusionary. The Wimers' expert, Mr. Victor, testified that, after having performed a thorough analysis of the Zoning Ordinance, including preparing a chart for the purpose, he concluded a wedding barn facility, special event venue, or similar facility was not provided for in any part of the Ordinance, including the "use not specifically listed" provision. (R.R. at 102a-04a.) Crucially, the Township does not appear to have taken the position at any point that the Zoning Ordinance *did* provide for such a use. Indeed, the Township's expert, Mr. Trant, implicitly acknowledged as much in his testimony. While Mr. Trant testified regarding what he considered to be several deficiencies in the Wimers' proposed curative amendment, which he believed would make it difficult to enforce throughout the Township, his ultimate suggestion was for the Township to amend the Zoning Ordinance to address the wedding barn issue by proceeding with Ordinance Nos. 2 and 3, with some revisions. (R.R. at 152a-55a, 162a-64a.)

Because the Wimers showed that the Ordinance totally excluded wedding barns as a permitted use, the burden shifted to the Township to show, with evidence, that the exclusion bore "a substantial relationship to the public health, safety, morality, or welfare." *Township of Exeter v. Zoning Hearing Board of Exeter Township*, 962 A.2d 653, 661 (Pa. 2009).

> When courts examine a zoning ordinance that fails to permit a particular lawful use throughout a municipality, the defending municipality must present evidence to support the ban of the use throughout the municipality, and not simply rely upon evidence demonstrating only that health, safety, and welfare concerns support the prohibition on the particular sites upon which an applicant proposes to develop

22

or construct the prohibited use. *See Exeter Twp.*, 962 A.2d at 653 ("[A] blanket prohibition without justification cannot pass constitutional muster."); *see also Application of Friday*, 381 A.2d 504, 507 (Pa. Cmwlth. 1978) (en banc) (holding site suitability irrelevant to question of constitutional validity of municipality-wide use prohibition).

*In re Bartkowski Investment Group, Inc.*, 106 A.3d 230, 240 (Pa. Cmwlth. 2014).

Here, as the trial court observed, the Township did not offer any evidence that the proposed use could pose a threat to the public health, safety and welfare. To the contrary, the Township appeared to concede the opposite, by proposing that the Board amend the Zoning Ordinance to permit such a use, albeit with limitations. Accordingly, the trial court did not err in holding that the Zoning Ordinance was unconstitutionally exclusionary in light of the lack of evidence from the Township demonstrating the exclusion bore a relationship to the health, safety, or welfare of the public.

With regard to fashioning relief, section 1006-A(c) states,

If the court finds that an ordinance or map, or a decision or order thereunder, which has been brought up for review unlawfully prevents or restricts a development or use which has been described by the landowner through plans and other materials submitted to the governing body, agency or officer of the municipality whose action or failure to act is in question on the appeal, *it may order the described development or use approved as to all elements* or it may order it approved as to some elements and refer other elements to the governing body, agency or officer having jurisdiction thereof for further proceedings, including the adoption of alternative restrictions, in accordance with the court's opinion and order.

53 P.S. §11006-A(c) (emphasis added).[12] In *H.R. Miller Company v. Board of Supervisors of Lancaster Township*, 605 A.2d 321, 325 n.5 (Pa. 1992), the Supreme Court stated that, in the case of a *de jure* exclusion, "[t]he sole remedy is to allow the

---

[12] Section 1006-A(c) of the MPC was added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §11006–A(c).

use somewhere, and under *Casey* and Section 1006-A(c) of the [MPC] . . . , the successful litigant must receive that benefit in the form of at least partial approval of the proposal."

Further,

> While approval of a challenger's plan is not automatic but must be predicated on the suitability of the proposed site and various health and safety considerations, the [Supreme] Court specifically held that a zoning provision adopted by a municipality which cures the constitutional infirmity but which was not considered prior to the filing of the challenge to the zoning ordinance, may not be given effect for purposes of fashioning the appropriate relief to be awarded to the successful challenger. Thus, if a governing body determines that its ordinance is defective, because it totally prohibits the use proposed by the challenging landowner, then the governing body must permit the challenging landowner to develop his land as proposed in the plans submitted with the challenge, provided, of course, that what is submitted is reasonable, and not injurious to the public health, safety and welfare and morals.

*Adams Outdoor Advertising, Ltd. v. Hanover Township Zoning Hearing Board*, 633 A.2d 240, 245 (Pa. Cmwlth. 1993) (internal citation omitted).

In the present case, the trial court, noting the Township's failure to present any evidence that the proposed use posed a threat to public health, safety, or welfare, determined it was appropriate to permit the Wimers to use their Property in accordance with the terms of the proposed curative amendment, given that "use as a wedding barn in [the] Township, where the number of wedding-type events is unlimited and the number of guests at the facility is limited to 300[,] is entirely reasonable." (Trial court op. at 18.) We cannot conclude that this relief was an error of law or abuse of discretion. *See Adams Outdoor*, 663 A.2d at 246 (holding that challengers should have been permitted to develop their property as proposed, regardless of how the land was

24

presently zoned because "the Township produced no evidence that would show that the proposed [use] would be injurious to the public health, safety and welfare of its citizens").

Although the Township argues the trial court should have granted the Wimers only as much relief as was necessary to remove the constitutional defect, we note that, under section 1006-A, a trial court's power to fashion appropriate relief for the successful challenger of a zoning ordinance is both "broad *and* discretionary." *In re Bartkowski*, 106 A.3d at 248 (emphasis in original). While the Township observes that the Wimers were not "guaranteed an absolute right to develop in the specific way they have proposed," the Township has not demonstrated that the trial court's remedy applying the terms of the proposed curative amendment solely to the Wimers' Property, while requiring compliance with all other applicable ordinances not addressed in the curative amendment, was an abuse of discretion. (Township's brief at 22.)

4. *Substantial Evidence for Board's Decision*

The Township argues the trial court erred in finding there was not substantial evidence to support the Board's finding that the Zoning Ordinance was not exclusionary. In support, the Township cites the fact that the Five Fillies barn was permitted to operate a wedding barn in the Township via special exception, with conditions, prior to the Wimers' challenge. The Township asserts that, if the Wimers desired to engage in a similar use on their property, they should have followed the same process by seeking a special exception. The Township contends that the trial court substituted its own judgment for that of the Board when it stated that the Five Fillies barn special exception was "an aberration" and concluded that the Wimers' use was excluded under the Zoning Ordinance.

25

We disagree. The mere fact that another operation was able to obtain a special exception permitting it to operate a wedding barn did not change the fact that the Zoning Ordinance did not permit the use proposed by the Wimers when they filed their challenge. Thus, the presence of Five Fillies barn in the county did not operate to cure or invalidate the Wimers' challenge to the contents of the Zoning Ordinance.

5. *Abuse of Discretion and Supplementation of the Record*

Finally, the Township argues the trial court erred in not permitting the Township to further supplement the record. The Township indicates it sought to open the record in order to permit additional testimony regarding issues of mootness and the pending ordinance doctrine and that, because those are issues on appeal, the trial court abused its discretion.

Section 1005-A of the MPC states, "If upon motion, *it is shown* that proper consideration of the land use appeal requires the presentation of additional evidence, a judge of the court may hold a hearing to receive additional evidence . . . ." 53 P.S. §11005-A (emphasis added).[13] "The question of whether presentation of additional evidence is to be permitted is a matter within the sound discretion of the trial court." *Caln Nether*, 840 A.2d at 498. "A [trial court] faces compulsion to hear additional evidence in a zoning case only where the party seeking the hearing demonstrates that the record is incomplete because the party was denied an opportunity to be heard fully, or because relevant testimony was offered and excluded." *Eastern Consolidation &*

---

[13] Section 1005 of the MPC was added by Act of December 21, 1988, P.L. 1329.

*Distribution Services, Inc. v. Board of Commissioners of Hampden Township*, 701 A.2d 621, 624 (Pa. Cmwlth. 1997) (internal quotation marks omitted).

Here, the trial court reasoned that it would open the record insofar as it would permit the Township to submit a certified copy of Ordinance No. 5 of 2017, reasoning that the Ordinance was not available for submission into the record during the hearing before the Board. The trial court denied the Township's motion in all other respects, however, reasoning that it was unnecessary as the Township had the opportunity to be fully heard before the Board and there was no indication in the record that the Township sought to present additional evidence or testimony.

We agree. The Township does not explain why it was unable to offer testimony or evidence regarding mootness or the pending ordinance doctrine during the hearing before the Board. Therefore, the trial court did not abuse its discretion in denying the Township's motion in that respect.

**Conclusion**

In conclusion, we hold that the trial court did not err in finding that the Zoning Ordinance was unconstitutional in that it totally excluded the use of wedding barns in the municipality, despite the fact that another entity was running a similar business by means of special exception. Further, we agree that the Township did not prove a substantial relationship between the exclusion and the public health, safety, morality, or general welfare. In light of the lack of that evidence, the trial court did not abuse its discretion in fashioning a remedy permitting the Wimers to use their Property in accordance with the terms of the proposed curative amendment. Additionally, we hold that the trial court did not err in determining that the matter was not moot or in

27

refusing to reopen the record to permit the Township to present additional evidence. The order of the trial court is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Wimer Realty, LLC; Wimer Holdings   :
Corporation; and Richard G. Wimer Jr.  :
and Jody Wimer, husband and wife,    :
                                  :   No.  656 C.D. 2018
             v.               :
                                    :
Township of Wilmington,         :
                 Appellant   :

## ***ORDER***

AND NOW, this 27th day of March, 2019, the order of the Court of Common Pleas of Lawrence County, dated April 13, 2018, is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge